## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

VERDEO SINDICATUM CORP.,
5511 Parkcrest Drive, Ste. 206
Austin, Texas 78731

       *Plaintiff*,

v.

BEN APPLE,
721 9th Street
Boulder, Colorado 80302

       *Defendant*.

Civil Action No. 15-1232

## COMPLAINT

Verdeo Sindicatum Corp., ("Verdeo" herein), by and through its undersigned attorneys alleges as follows:

### INTRODUCTION

1.     Verdeo brings this action to remedy the harm Defendant Ben Apple ("Apple") has caused to Verdeo by virtue of his breach of certain contractual commitments that Apple made to Verdeo, and by virtue of his breach of the duty of loyalty that Apple owed to Verdeo as its employee.

### THE PARTIES

2.     Plaintiff Verdeo Sindicatum Corp. is a Delaware corporation with its principal place of business in Austin, Texas.  Verdeo develops, owns, and operates clean energy projects

and emission reduction projects in the United States.  Verdeo's business includes reducing greenhouse gas emissions to generate environmental commodities called carbon offset credits.

3.      Defendant Ben Apple is a resident of Colorado.

## JURISDICTION & VENUE

4.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.  Verdeo is a citizen of Delaware with its principal place of business in Austin, Texas.  Apple is a citizen of Colorado.

5.      This Court has personal jurisdiction over Apple because Apple consented to personal jurisdiction by executing a written agreement memorializing the terms and conditions of his employment at Verdeo (the "Employment Agreement") containing a forum selection provision.  The Employment Agreement is attached hereto as Exhibit 1.  In addition, this Court also has personal jurisdiction over Apple because, in a case filed in the Circuit Court for Montgomery County, State of Maryland, Apple's attorney represented to the Hon. Michael D. Mason during a July 17, 2015 hearing on a motion to dismiss for lack of personal jurisdiction and improper venue that Apple would not contest personal jurisdiction should Verdeo file a complaint against Apple in the District of Columbia.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events in this matter occurred in this district, and because Apple consented to venue by executing the Employment Contract, which contains a forum selection provision.  In addition, venue also is proper because, in a case filed in the Circuit Court for Montgomery County, State of Maryland, Apple's attorney represented to the Hon. Michael D. Mason during a July 17, 2015 hearing on a motion to dismiss for lack of personal jurisdiction and improper venue that Apple

would not contest venue should Verdeo file a complaint against Apple in the District of Columbia.

## STATEMENT OF FACTS

7.      On or about August 1, 2008, Verdeo hired Apple as its Director – Mining Solutions.

8.      On or about March 31, 2011, Verdeo made Apple a Vice President.

9.      As Vice President, Apple served as an executive at Verdeo involved in senior management decisions.

10.     Under Section 6(b) of the Employment Agreement, Apple agreed to keep confidential certain categories of information relating to Verdeo's business, including trade secrets.  This provision survived termination of Apple's employment with Verdeo.

11.     Under Section 6(d) of the Employment Agreement, Apple agreed that during his employment with Verdeo, and for a period of three months following the termination of his employment, Apple would not directly or indirectly compete with Verdeo and/or Verdeo's affiliates.  The paragraph states:  "For avoidance of doubt, the Employee shall be in breach of this Section 6(d) to the extent they act as an agent, representative, consultant officer, director, or independent contractor or employee of any Person which is engaged in the Competing Business or participating as an owner, partner, limited partner, joint venture or shareholder of a Person which is engaged in a Competing Business."

12.     Under Section 6(c) of the Employment Agreement, Apple agreed that during his employment with Verdeo and for a period of six months following the termination of his employment with Verdeo, Apple would not directly or indirectly, for himself or another Person, compete for, solicit, divert or take away any client or person/entity he knew to be a prospective client of Verdeo and/or its Affiliates.

13.     Apple's performance of his duties as Vice President at Verdeo, in part, consisted in the creation of goodwill of Verdeo's clients, which Verdeo has a legitimate interest in protecting.

14.     As Vice President, Apple served as the primary point of contact at Verdeo for customers, actual and prospective, that Verdeo asked Apple to handle

15.     With respect to those actual and prospective customers, Apple served as the person primarily responsible for doing the work necessary to meet Verdeo's obligations under contracts with some customers and, thus, worked to meet customer expectations and execute certain projects.

16.     Apple's job duties included creating customer confidence in Verdeo and Verdeo's capabilities.

17.     Apple's performance of his duties as Vice President of Verdeo gave him access to confidential information and trade secrets belonging to Verdeo, including but not limited to the identity of existing and prospective clients and Verdeo's efforts with those existing and prospective clients.

18.     Apple voluntarily left Verdeo on January 17, 2014.

19.     ECC incorporated with the Delaware Secretary of State on June 25, 2013.

20.     In that filing, ECC lists Apple as a director of the corporation.

21.     Upon information and belief, Apple was also a shareholder of ECC as of that date.

22.     ECC registered to do business in Maryland on December 31, 2013.

23.     Upon information and belief, at some point prior to Apple's January 17, 2014 voluntary resignation from Verdeo,  ECC engaged in efforts with, through, and for the benefit of

ECC to compete with Verdeo for the business of Verdeo's existing and prospective clients, including, but not limited to, CONSOL Energy, Inc.

24. Upon information and belief, Apple was a director and shareholder of ECC prior to his January 17, 2014 voluntary resignation from Verdeo, and during the period when ECC was engaging in efforts with, through, and for the benefit of ECC to compete with Verdeo for the business of Verdeo's existing and prospective clients, including, but not limited to, CONSOL Energy, Inc.

25. Upon information and belief, at some point prior to the expiration of his commitments to Verdeo under the Employment Agreement, ECC engaged in efforts with, through, and for the benefit of ECC to compete with Verdeo for the business of Verdeo's existing and prospective clients, including, but not limited to, CONSOL Energy, Inc.

26. Upon information and belief, Apple was a director and shareholder of ECC prior to the expiration of his commitments to Verdeo under the Employment Agreement and during the time period when ECC was engaging in efforts with, through, and for the benefit of ECC to compete with Verdeo for the business of Verdeo's existing and prospective clients, including, but not limited to, CONSOL Energy, Inc.

27. Upon information and belief, at some point prior to the expiration of his commitments to Verdeo under the Employment Agreement, Apple engaged in efforts with, through and for the benefit of ECC to compete with Verdeo for the business of Verdeo's existing and prospective clients, including, but not limited to, CONSOL Energy, Inc.

28. Verdeo unnecessarily paid compensation to Apple during the period where he was employed by Verdeo while also unlawfully competing with Verdeo.

29. Apple knew or should have known that his unlawful behavior would harm Verdeo's goodwill with its actual and prospective clients, and cause other injuries to Verdeo's business.

30. Apple's unlawful behavior harmed Verdeo's goodwill with its actual and prospective clients, and caused other injuries to Verdeo's business.

## CLAIMS FOR RELIEF

### COUNT I
### (Breach of Contract)

31. Verdeo realleges and incorporates by reference Paragraphs 1-30 as if fully set forth herein.

32. Verdeo had a binding Employment Agreement with Apple.

33. Under the Employment Agreement, Apple undertook certain contractual obligations in exchange for being given the position of Vice President at Verdeo and obtaining access to Verdeo's confidential information.

34. Each of the obligations in the Employment Agreement is reasonable, and Apple received adequate consideration from Verdeo for those commitments.

35. Apple violated those obligations by starting a competing business ("ECC") while still employed by Verdeo.

36. Apple violated those obligations by soliciting, directly or indirectly, current and prospective clients of Verdeo prior to the expiration of the applicable provisions.

37. Apple violated those obligations by using Verdeo trade secrets and proprietary information for his own and/or ECC's benefit.

38. Verdeo was injured in its business, in an amount to be proven at trial, by Apple's breaches.

## COUNT II
### (Breach of Duty of Loyalty)

39.     Verdeo realleges and incorporates by reference Paragraphs 1-38 as if fully set forth herein.

40.     Apple was an employee of Verdeo from on or about March 31, 2011, when Verdeo made Apple a Vice President, until January 17, 2014, when Apple voluntary resigned from Verdeo.

41.     Apple owed Verdeo a duty of loyalty during his time as a Verdeo employee to act in Verdeo's best interests and act in good faith in all matters relating to his employment at Verdeo.

42.     As Verdeo's Vice President and the primary point of contact at Verdeo for customers, actual and prospective that Verdeo asked Apple to handle, Apple was in a position of trust and confidence and came into possession of Verdeo's trade secrets.

43.     As an employee in a position of trust and confidence who came into possession of Verdeo's trade secrets, Apple owed Verdeo a duty of loyalty with regards to those trade secrets that survived the termination of the employment relationship.

44.     Apple became a shareholder and director of ECC, a direct competitor of Verdeo, during the time when Apple was still a Verdeo employee.

45.     ECC competed with Verdeo when Apple was still a Verdeo employee.

46.     During his time as a Verdeo employee and afterwards, Apple used Verdeo's trade secrets for purposes adverse to Verdeo's interests.

47.     Verdeo was harmed by Apple's disloyalty.

## PRAYER FOR RELIEF

WHEREFORE, Verdeo requests the following relief:

A.     A Judgment entered against Defendant and for Verdeo on each claim of its complaint;

B.     An Order permanently requiring Apple to return to Verdeo all Verdeo property in his possession, including proprietary and confidential information belonging to Verdeo, and enjoining Defendant from using that information in the future

C.     An Order requiring Apple to disgorge to Verdeo all compensation paid to him by Verdeo during Apple's period of disloyalty together;

D.     An Order requiring Apple to pay to Verdeo compensatory, special, incidental, and punitive damages for Apple's breach of contract and breach of duty of loyalty;

E.     An Order requiring Apple to pay the appropriate pre-judgment or post-judgment interest on any award;

F.     An Order requiring Apple to pay to Verdeo its costs for bringing this lawsuit; Judgment for punitive damages; and

G.     An Order requiring such other and further relief that the Court deems appropriate.

## DEMAND FOR A JURY TRIAL

Plaintiff Verdeo demands a jury trial.

July 31, 2015

By:    /s/ Richard A. Ripley_____

Richard A. Ripley, Bar No. 412959
E-Mail:  richard.ripley@haynesboone.com
HAYNES AND BOONE, LLP
800 17th Street, NW, Suite 500
Washington, DC 20006
T: 202.654.4500
F: 202.654.4245


Attorney for Plaintiff
VERDEO SINDICATUM CORP.